[No. A053672. First Dist., Div. One. Apr. 9, 1992.]

JACK EDWARD BURGE, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and
Appellants.

COUNSEL

Knutsen & Smithwick and Thomas Knutsen for Plaintiff and Respondent.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill and Henry G. Ullerich, Assistant Attorneys General, Jose R. Guerrero and Kerry Weisel, Deputy Attorneys General, for Defendants and Appellants.

OPINION

STEIN, J.—The Department of Motor Vehicles (DMV) issued an order suspending the driver's license of Jack Edward Burge on the ground that

Burge had driven with a blood-alcohol concentration greater than .08 percent. Burge challenged that order at a DMV administrative hearing. The hearing officer determined that the evidence supported the order and upheld the suspension. Burge thereafter petitioned the superior court for a writ of mandate directing the DMV to set aside its order. The writ was granted, and the DMV appeals. Finding that the trial court's decision was not supported by substantial evidence (see *Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 576 [2 Cal.Rptr.2d 249]), we will reverse.

■ This appeal concerns the type of evidence which may be relied upon by a hearing officer considering if a DMV's order of suspension was properly issued. At issue here is the hearsay statement of the police officer who arrested Burge and a printout record of the intoxilyzer test administered to him. Questions relating to the use of such evidence at DMV hearings have been the subject of recent cases, and certain principles have been developed.

■ First, the DMV has the evidentiary burden of justifying its order of suspension. (*Coombs* v. *Pierce, supra,* 1 Cal.App.4th at pp. 580-581, citing *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].) ■ Second, the hearsay statement of a public employee, such as the statement of a police officer, or the tester's written report of the results of a blood-alcohol test, is admissible at the hearing, and is sufficient in and of itself to support a finding, if it meets the criteria of a public employee business record (Evid. Code, § 1280). (*Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 813-815 [3 Cal.Rptr.2d 478].) This principle arises from the provisions of Government Code section 11513 providing that hearsay evidence may provide the sole supporting evidence for a finding, if such evidence would be admissible over objection in a civil action. A police officer's hearsay statement, submitted in accordance with Vehicle Code section 13353 (sometimes called a DL 367 statement as it is executed on DMV Form DL 367) ordinarily meets the criteria for the public employee business record exception to the hearsay rule: (1) that the statement be made by and within the scope of duty of a public employee at or near the time of the act, condition or event, and (2) that the sources of information and method and time of preparation are such as to indicate the statement's trustworthiness. (*Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 814-815, citing *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1374-1376 [240 Cal.Rptr. 281].) Such a statement, therefore, would be admissible in a civil action and accordingly is sufficient evidence to support a finding. Similarly, the written report of the results of a blood-alcohol test, prepared on behalf of law enforcement agencies by a licensed laboratory, ordinarily meets the criteria for a public employee business record and provides sufficient support for a finding that a licensee's blood-alcohol concentration was as stated

in the report. (*Imachi, supra,* at pp. 816-817.) Public employee business records, however, are admissible in civil actions only to the extent that they report the employee's firsthand knowledge. These statements, therefore, may form the sole basis for suspension of a driver's license only if made from firsthand observation. (*Id.* at p. 817.)

In addition, tests performed by authorized laboratories are presumptively valid; i.e., the DMV need not present foundational evidence that the test apparatus was in working order, the test was properly administered and the operator was competent and qualified. Once a report of such a test is admitted, the burden passes to the party challenging it to show that the test was in some way flawed. (*Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 816-817.)[1] Finally, the principles set forth in *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240] and *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013, requiring foundational evidence as to the general acceptance of a new scientific method of proof, are inapplicable to well-accepted methods of testing blood alcohol. (*Imachi, supra,* at p. 817, fn. 6.)

Under these principles, the superior court erred in finding that the evidence did not support the order of suspension. The only evidence submitted at the DMV hearing, by either party, was documentary evidence submitted by the DMV. This evidence included the DL 367 statement of the arresting officer, M. Boyle. That evidence, admissible in a civil action as a public employee business record, and uncontradicted by Burge, established that the officer had observed Burge tailgating another vehicle, that Burge exhibited bloodshot and watery eyes, an odor of alcohol and slurred speech, and that his performance on the field sobriety tests was poor.

---

[1] The court in *Imachi* found "Chemical tests to determine blood-alcohol concentration at the time of arrest are performed by forensic laboratories which must comply with procedures set out in the California Code of Regulations. (Health & Saf. Code, § 436.50; Cal. Code Regs., tit. 17, §§ 1215-1220.4.) These regulations include requirements for forensic laboratories and analysts, collection and handling of samples and methods of analysis. Methods of analysis must be in accord with specified standards of performance and procedure (including the requirement that instruments used for alcohol analysis must be in good working order and be routinely checked for accuracy and precision (Cal. Code Regs., tit. 17, § 1220.2, subd. (a)(5)) as well as a quality control program adopted by the Department of Health Services. (Cal. Code Regs., tit. 17, §§ 1220.1, 1220.2, 1220.3.) The actual written report of [such a test] performed by a licensed forensic laboratory on behalf of a law enforcement agency would presumably fall within the public employee records exception to the hearsay rule: The record of the test result would be 'made by and within the scope of duty of a public employee,' 'at or near the time of the act, condition, or event' and the requisite indicia of trustworthiness would be supplied by the fact that the analyst was reporting firsthand observations as well as by the presumption of official duty regularly performed. (Evid. Code, § 664.) Accordingly, faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed." (*Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 816-817, fn. omitted.)

The DMV also introduced an intoxilyzer test result reporting that Burge's blood-alcohol concentration had been tested at .12. The test record was signed by Officer Boyle as the operator, and was printed "Alameda County Sheriff's Department Criminalistics Laboratory." This record, accordingly, is exactly the type of report found admissible by the court in *Imachi*.[2] It meets the criteria of a public employee business record, it is subscribed by a person having firsthand knowledge of the matters stated therein and, absent challenge by Burge, it was unnecessary for the DMV to lay a foundation for its admission.[3]

It follows that the DMV's evidence established the presumption that Burge's blood-alcohol concentration exceeded permissible limits. As Burge introduced no evidence contradicting the presumption that the tests had been properly performed, the hearing officer and the superior court had to accept that presumption as true.

■ Burge argues that the evidence is insufficient because, as it does not include a statement of the time of the test, it does not establish that his blood-alcohol concentration exceeded .08 percent at the time that he was driving. The argument is without merit. Officer Boyle's statement was that Burge had been arrested on December 7, 1990, at 11:01 p.m. The intoxilyzer test record indicates that the test was given by the same officer on December 7, 1990. The record also reports that Burge was first observed at 11:01 and that he was observed for 15 minutes before the test was given. It follows that the test was given within 45 minutes of Burge's arrest (i.e., a test given more than 1 hour after Burge was first observed would have been given on Dec. 8). Accordingly, there is evidence of the time of the test. In addition, there was evidence that Burge exhibited all the indicia of significant intoxication at the time that he was arrested. This evidence, coupled with evidence of blood-alcohol level within one hour of driving, supports the hearing officer's

---

[2] The problem in *Imachi* was not that the test report itself was inadmissible, but that the DMV failed to introduce it. Rather, the DMV attempted to support the finding of blood-alcohol concentration with nothing more than the nonoperator police officer's statement. "While the [officer's] statement is admissible as a public employee record to the extent it reports the officer's firsthand observations [citations], the hearsay within the statement could not be the sole basis for suspension of appellant's driver's license. [Citations.]" (*Imachi* v. *Department of Motor Vehicles, supra*, 2 Cal.App.4th at p. 817.) In the present case, in contrast, not only was the report itself put into evidence, but the police officer's statements as to blood-alcohol concentration (reported on the DL 367 form) were made from firsthand observation.

[3] Contrast *Coombs* v. *Pierce, supra*, in which the licensee introduced evidence that the laboratory which performed the intoxilyzer test was not licensed to use the apparatus at issue. This evidence rebutted the inference that the test was properly administered, requiring the DMV to introduce independent evidence of reliability. The DMV failed to do so and the appellate court concluded that the finding of blood-alcohol concentration was not supported. (*Coombs* v. *Pierce, supra*, 1 Cal.App.4th at pp. 579-581.)

finding that Burge's blood-alcohol concentration exceeded .08 percent at the time that Burge was driving.

 In addition, Vehicle Code section 23152, subdivision (b) sets forth a rebuttable presumption as to "any prosecution under this subdivision" that "the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving." Burge argues that the subdivision may not be read as establishing a presumption for any proceeding other than prosecution under section 23152, i.e., that it may not be used as evidence in an administrative hearing. Such a construction would, we think, be contrary to the evident purpose of the Legislature in creating the presumption. Thus, the Legislature, recognizing in fact that breath tests taken within three hours after driving accurately reflect blood-alcohol concentration during driving, determined that independent proof of this fact need not be offered. We can see no reason why the Legislature would choose to accept the fact as presumptively established in criminal prosecutions but not in administrative proceedings. " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' [Citation.]" (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) "A court may look beyond the literal words of a statute when plain meaning leads to unreasonable results inconsistent with the purposes of the legislators. [Citation.]" (*Love* v. *Superior Court* (1990) 226 Cal.App.3d 736, 745 [276 Cal.Rptr. 660].) We therefore hold that the presumption of section 23152 applies to DMV hearings and, in the present case, established the rebuttable presumption that Burge's blood-alcohol concentration exceeded permissible levels when he was driving.

The DMV, accordingly, made a prima facie showing at the administrative hearing that Burge had been driving with a blood-alcohol concentration in excess of .08. The burden then shifted to Burge to dispute that showing, if he could. Burge submitted no evidence. The superior court therefore was without basis to find that the DMV had failed in its burden of proof.

The judgment granting the writ of mandate is reversed.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied May 5, 1992, and respondent's petition for review by the Supreme Court was denied June 25, 1992.