[No. C043125. Third Dist. Dec. 30, 2003.]

STEPHANIE J. TAXARA, Plaintiff and Respondent, v.
CHON GUTIERREZ, as Acting Director, etc., Defendant and Appellant.

## COUNSEL

Bill Lockyer, Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Vincent J. Scally, Jr. and Steven Kaiser, Deputy Attorneys General, for Plaintiff and Appellant.

Mark H. Sollitt for Defendant and Respondent.

## OPINION

**ROBIE, J.**—After Stephanie J. Taxara failed a breath test, the Department of Motor Vehicles (DMV) suspended her driver's license. In this administrative mandate proceeding, the trial court directed the DMV to set aside the suspension because the administrator of the breath test had not continuously observed Taxara for 15 minutes before the test. On the DMV's appeal of that ruling, we conclude California Code of Regulations, title 17, section 1219.3, (hereafter regulation 1219.3) does not require a single person to observe the breath test subject for 15 minutes prior to the test. Therefore, we will reverse the judgment and remand the case to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

At around 9:38 p.m., on March 15, 2001, Sergeant Chris Reams stopped Taxara for failing to stop at a stop sign and speeding. Reams smelled alcohol on Taxara's breath and observed Taxara's unsteady gait, slurred speech, and red, watery eyes. Taxara performed poorly on a series of field sobriety tests. Accordingly, Reams arrested Taxara for driving under the influence of alcohol and transported her to the Auburn police station.

At the police station, Sergeant Reams filled out paperwork while Taxara sat across from him at his desk. Departmental policy required Reams to remain within city limits because he was the most senior officer on duty. The only available breath test machine, however, was located outside the city at the Placer County jail. Thus, Reams asked Officer Victor Pecoraro to transport Taxara from the police station to the county jail to administer the test.

At 10:48 p.m., Officer Pecoraro drove Taxara to the jail. The printout, which records the breath test results and the times they were performed, shows Taxara gave the first of her breath samples at 10:58 p.m. Taxara's blood-alcohol content measured 0.11 percent on two breath tests.

The DMV suspended Taxara's driver's license for driving with 0.08 percent or more of alcohol in her blood. (Veh. Code, § 13353.2.) After a hearing, the hearing officer reimposed the suspension. The hearing officer relied on the "Breath Test Machine Operator's Certification" Officer Pecoraro signed, which stated: "I certify under penalty of perjury under the laws of the State of California, that the above breath test sample results were obtained in the regular course of my duties. I further certify that I am qualified to operate

this equipment and that the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations."

To ensure the presumptive reliability of the test results, the administrator of a breath test must follow regulation 1219.3, which provides: "A breath sample shall be expired breath which is essentially alveolar in composition. The quantity of the breath sample shall be established by direct volumetric measurement. The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to the collection of the breath sample, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked."

The hearing officer rejected Taxara's argument that she was not continuously observed during the 15 minutes before her breath test because it was "based on a subjective interpretation of the evidence."

Taxara challenged the DMV's suspension by filing a petition for a writ of mandate. (Veh. Code, § 13559; Code Civ. Proc., § 1094.5; see also *Coombs v. Pierce* (1991) 1 Cal.App.4th 568, 575 [2 Cal.Rptr.2d 249].) In her petition, Taxara made four contentions, only one of which is material to our decision. Specifically, she argued Officer Pecoraro did not continuously observe her for 15 minutes before her breath test.

The trial court granted Taxara's petition, finding that under regulation 1219.3 the officer who administers the Intoxilyzer 5000 test should have 15 minutes of continuous observation. The court reasoned: "Because Officer Pecoraro did not even arrive at the Auburn Police Station until just before he left the Station with Petitioner, not enough time transpired for Officer Pecoraro to have completed the requisite fifteen minute observation period. [Citation.] Although Sgt. Reams apparently had Petitioner in custody for more than fifteen minutes, his observation is immaterial because he did not administer the Intoxilyzer 5000 test, and because Title 17 requires that the fifteen minute period take place immediately before collection of the breath sample. [¶] . . . Having decided the matter based on the propriety of [Taxara's] testing alone, the Court declines to rule on the other alleged hearing improprieties . . . ." The DMV appeals.

## DISCUSSION

The DMV contends the trial court erred when it interpreted regulation 1219.3 to require a single person to observe the test subject for 15 minutes before giving the breath test. We agree.

## I

### *Driver's License Suspension Process*

An administrative DMV hearing concerning the suspension of a driver's license " 'does not require the full panoply of the Evidence Code provisions used in criminal and civil trials.' " (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232 [130 Cal.Rptr.2d 209] (*Manriquez*), quoting *Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 [107 Cal.Rptr.2d 909].) "In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. [Citations.] The DMV may satisfy its burden via the presumption of Evidence Code section 664. [Citation.] 'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.]' " (*Manriquez*, at p. 1232, quoting *Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 64–65 [126 Cal.Rptr.2d 327].) "With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test." (*Manriquez*, at p. 1233, citing *Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140–141 [7 Cal.Rptr.2d 818].)

"Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. [Citations.] 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed. . . ." [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' [Citations.]" (*Manriquez, supra*, 105 Cal.App.4th at p. 1233, quoting *Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172–1173 [97 Cal.Rptr.2d 451].)

## II

### *Standard of Review*

" 'In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its

independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " ' " (*Manriquez, supra,* 105 Cal.App.4th at p. 1233, quoting *Lake v. Reed* (1997) 16 Cal.4th 448, 456 [65 Cal.Rptr.2d 860, 940 P.2d 311].) "On appeal, our function is to determine whether the trial court's findings are supported by substantial evidence." (*Shannon v. Gourley, supra,* 103 Cal.App.4th at p. 64, citing *Lake v. Reed, supra,* 16 Cal.4th at p. 457.) Normally, " ' "[w]e must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.]" ' " (*Lake v. Reed, supra,* 16 Cal.4th at p. 457.) "But where, as here, the determinative question is one of statutory or regulatory interpretation, an issue of law, we may exercise our independent judgment. [Citations.]" (*Manriquez,* at p. 1233.)

## III

### *Regulation 1219.3 Does Not Require a Single Officer to Continuously Observe the Subject*

With this in mind, we examine whether regulation 1219.3 requires a single officer to observe the subject or whether two or more officers can satisfy the 15-minute continuous observation requirement.

"Our foremost aim is to ascertain the intent of the agency issuing the regulation to effectuate the purpose of the law. [Citations.] When the agency's intent cannot be discerned directly from the language of the regulation, we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. [Citation.] Whenever possible, we will interpret the regulation to make it workable and reasonable. [Citation.]" (*Manriquez, supra,* 105 Cal.App.4th at p. 1235.)

We start with the language of the regulation. Regulation 1219.3 provides that the subject of a breath test must have "been under continuous observation for at least fifteen minutes prior to the collection of the breath sample." As a practical matter, the administrator of the breath test must have observed the test subject for some part of the 15-minute period because the regulation requires the observation period to immediately precede the collection of the breath sample. However, there is nothing in the language of the regulation that requires the administrator of the breath test to conduct the *entire* observation. So long as the observation of the subject is "continuous" for at least 15 minutes, the regulation is satisfied. We see no reason why two or more observers who—much like runners in a relay race—observe the subject in succession over a period of at least 15 minutes preceding the breath test cannot be deemed to have conducted the "continuous observation" regulation 1219.3 requires.

Allowing successive observers to satisfy the continuous observation requirement does not defeat the purpose of the regulation. The continuous observation requirement helps ensure the test's reliability. (*Manriquez, supra,* 105 Cal.App.4th at p. 1236, fn. 3.) That purpose is served when the administrator of the breath test observes the subject for at least 15 minutes before the test. That purpose is also served, however, when two or more observers split the continuous observation of the test subject. Two or more observers, acting in succession, can ensure the subject did not ingest food or drink, regurgitate, vomit, or smoke in the 15 minutes before the test, just as easily as a single observer. The trial court's conclusion to the contrary was erroneous.

Our interpretation of regulation 1219.3 is more workable in the real life of law enforcement. Sergeant Reams testified about unexpected delays and "real world crunches" that challenge peace officers. Here, Reams sat across from Taxara for more than 15 minutes. Because of departmental policies, however, he was unable to administer Taxara's breath test and had to rely on Officer Pecoraro's assistance. We interpret regulation 1219.3 as permitting the administrator to rely on other observers when necessary.

Taxara argues the administrator of the breath test cannot validly certify that the test was administered pursuant to title 17 if the administering officer is not present during the entire 15 minutes. We disagree. Where two or more successive observers continuously observe the test subject, the administering officer can ascertain from the observers who preceded him whether their observations, combined with his own, satisfy the continuous observation requirement.

Here, Officer Pecoraro certified under penalty of perjury "the test was administered pursuant to the requirements of Title 17." Proof that Pecoraro observed Taxara for less than 15 minutes was, by itself, not sufficient to rebut the presumption arising from that certification that Pecoraro and Sergeant Reams together continuously observed Taxara for at least 15 minutes immediately preceding the test. On remand, the trial court must independently review the administrative record to determine whether any other evidence offered by Taxara rebutted the presumption that Pecoraro and Reams complied with title 17.

Because the trial court's ruling was based solely on its erroneous interpretation of regulation 1219.3, and the trial court has not yet exercised its independent judgment with respect to Taxara's other contentions, we do not reach any other issues presented in this case. The trial court shall consider the parties' remaining arguments on remand. We express no opinion on the merits of Taxara's other claims.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court for consideration of Taxara's contentions in her petition. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a)(4).)

Scotland, P. J., and Nicholson, J., concurred.